Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| MUNICIPIO AUTÓNOMO DE CATAÑO<br><br>Apelado<br><br><br>v.<br><br><br>THE OCEAN CORP.<br><br>Apelante | TA2025AP00342 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Municipal de Bayamón<br><br>Caso número: BY2025CV01574<br><br>Sobre: Desahucio por Incumplimiento de Contrato |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 15 de enero de 2026.

Comparece ante nos la parte apelante, The Ocean Corp., y solicita la revocación de la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 11 de septiembre de 2025. Mediante el referido dictamen, el foro primario declaró Ha Lugar la demanda sobre desahucio incoada por la parte apelada, Municipio Autónomo de Cataño. En consecuencia, ordenó a la parte apelante que desalojara la propiedad en cuestión.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**I**

El 28 de marzo de 2025, el Municipio Autónomo de Cataño (Municipio o parte apelada) presentó una *Demanda* sobre desahucio por incumplimiento de contrato, en contra de The Ocean Corp. (The Ocean o parte apelante).[1] El Municipio alegó que, el 16 de noviembre de 2021, las partes suscribieron un contrato de arrendamiento

---

[1] Entrada núm. 1 del caso núm. BY2025CV01574 del SUMAC.

relacionado con el Local Comercial # 3 de la Bahía Viva, el cual ubica en Cataño, Puerto Rico. Sostuvo que, en virtud del referido contrato, The Ocean se comprometió a efectuar pagos por concepto de arrendamiento, ascendentes a $450.00 mensuales y que dicho canon sería pagadero dentro de los primeros cinco (5) días naturales de cada mes. Asimismo, alegó que The Ocean se obligó a mantener vigente una póliza de seguro de responsabilidad pública con endoso a favor del Municipio.

Así también, la parte apelada adujo que la parte apelante violentó las estipulaciones contractuales al omitir efectuar el pago correspondiente a dos (2) o más cánones de arrendamiento, así como al no mantener una póliza de seguro de responsabilidad pública con endoso, en favor del Municipio. En específico, el Municipio reclamó que, a partir del 1 de noviembre de 2023, The Ocean omitió pagar once (11) cánones de arrendamiento, a razón de $450.00 cada uno. Sin embargo, reconoce que, en abril de 2024, la parte apelante realizó un abono de $1,800.00, por lo que, al momento de presentar la *Demanda*, **la deuda existente ascendía a $3,150.00**.

El Municipio también alegó que, de conformidad con las cláusulas 9.4, 9.4.1 y 9.4.4 del acuerdo suscrito, dio por resuelto el contrato sin notificación previa a The Ocean. Como remedio, solicitó que el foro primario ordenase el desahucio de la parte apelante del local comercial que ocupa, así como una suma de $2,000.00, por concepto de las costas y gastos del proceso judicial.

Luego de varias incidencias procesales, el 7 de mayo de 2025 el foro primario llevó a cabo una vista mediante videoconferencia.[2] Durante la referida vista, el foro *a quo* ordenó a las partes exponer su posición con relación a si, conforme a las alegaciones del

---

[2] Véase, *Minuta* notificada a las partes el 9 de mayo de 2025. Entrada núm. 11 del caso núm. BY2025CV01574 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Municipio, este caso debía ventilarse bajo el procedimiento sumario establecido en el Código de Enjuiciamiento Civil, 32 LPRA sec. 2381 o si, por el contrario, debía dilucidarse al amparo de un procedimiento ordinario.

En cumplimiento de la orden del foro primario, el 5 de junio de 2025, The Ocean presentó un escrito que tituló *Moción asumiendo representación legal y en cumplimiento de orden*.[3] En lo pertinente, planteó que el caso nunca debió presentarse bajo el procedimiento sumario. Es la postura de la parte apelante que la parte apelada instó la *Demanda* de epígrafe a sabiendas de que no existía deuda por parte de The Ocean, por lo que no procedía instar una causa de acción por desahucio.

Por su parte, el 7 de julio de 2025, el Municipio presentó su postura por escrito.[4] Expuso que, a su juicio, no procedía la conversión al procedimiento ordinario. Ello, debido a que los incumplimientos del contrato en cuanto a la morosidad en el pago de cánones y la ausencia de una póliza de seguro de responsabilidad pública debidamente endosada al Municipio eran asuntos incontrovertibles que estaban plenamente documentados.

Tras evaluar las posturas de las partes, el 12 de agosto de 2025, el foro primario resolvió mantener el caso en el trámite sumario.[5] Asimismo, pautó una vista para el 10 de septiembre de 2025.

Llegado el día señalado, las partes comparecieron, por conducto de sus respectivos abogados y se llevó a cabo el juicio en su fondo. Allí, la parte apelada presentó como testigo a Juan C. Rivera Ocasio, Auxiliar de Contabilidad del Municipio, mientras que, por su parte, The Ocean presentó como su testigo a Abad A. Martínez

---

[3] Entrada núm. 13 del caso núm. BY2025CV01574 del SUMAC.
[4] Entrada núm. 14 del caso núm. BY2025CV01574 del SUMAC.
[5] Entradas núm. 22 y 23 del caso núm. BY2025CV01574 del SUMAC.

Calderón. En cuanto a evidencia documental, el contrato suscrito entre las partes fue admitido como exhibit por estipulación. Asimismo, se admitió como prueba ofrecida por la parte apelante una póliza de seguros con fecha de 23 de abril de 2025, que estaba vigente hasta el 23 de abril de 2026.

Luego de evaluar la prueba testifical y documental admitida, el foro primario emitió y notificó la *Sentencia* apelada el 11 de septiembre de 2025.[6] Así, tras formular once (11) determinaciones de hechos, el foro *a quo* concluyó que procedía la acción de desahucio incoada por el Municipio en contra de The Ocean. En lo pertinente, el foro primario concluyó lo siguiente:

> [E]valuada la evidencia documental y luego de efectuar un análisis de los testimonios y a base de la credibilidad que le brindáramos, no albergamos duda que la demandada incumplió con los parámetros del contrato al dejar de realizar varios pagos de la renta en la forma y manera establecidas en el contrato entre las partes.[7]

Como consecuencia de lo anterior, mediante la *Sentencia* apelada, el foro primario declaró Ha Lugar la *Demanda* de epígrafe. En consecuencia, ordenó a la parte apelante desalojar la propiedad en cuestión. Por otro lado, en cumplimiento con el Artículo 634 del Código de Enjuiciamiento Civil, según enmendado, 32 LPRA sec. 2835, impuso una fianza de $25,000.00, a ser consignada en el tribunal en caso de que interesara apelar la referida determinación.

Insatisfecha, el 16 de septiembre de 2025, la parte apelante instó el recurso de epígrafe y señaló los siguientes errores:

> Cometió error el TPI al excluir, *motu proprio* y sin fundamento legal alguno, los recibos de pago que evidenciaban que los cánones de arrendamiento estaban al día al 5 de mayo de 2025, y que no existía deuda alguna a la fecha de la radicación de la demanda. o sea, al 28 de marzo de 2025.

> Cometió error el TPI al determinar que la apelada tenía una causa de acción contra el apelante al momento de radicar su demanda el 28 de marzo de 2025.

---

[6] Entrada núm. 25 del caso núm. BY2025CV01574 del SUMAC.
[7] Véase, *Sentencia* apelada, pág. 9. Entrada núm. 25 del caso núm. BY2025CV01574 del SUMAC.

Cometió error el TPI al inferir que no existía una póliza de seguro a favor del [M]unicipio y no mencionar que se presentó prueba testifical de la existencia de una póliza que vencía en julio de 2025.

De forma conjunta, la parte apelante presentó una *Moción Urgente en Auxilio de Jurisdicci[ó]n*. En síntesis, argumentó que la fianza impuesta de $25,000.00 por el foro *a quo* era excesiva e injustificada. Arguyó, además, que la referida fianza representaba un obstáculo para presentar propiamente su reclamo ante este Foro, por lo que consignó $500.00 como fianza. Según adujo, la mencionada cantidad cubría los cánones de arrendamiento del mes de octubre y parte de noviembre del año corriente. En vista de ello, solicitó que, en lugar de mantener la fianza impuesta por el foro primario, se le ordenara consignar los cánones de arrendamiento, según vencieran, hasta tanto se resolviera el recurso o se dispusiera otra cosa.

Examinados los escritos, el día siguiente, emitimos una *Resolución,* mediante la cual le otorgamos un término al apelante para que mostrara causa por la cual no debíamos desestimar el recurso por falta de jurisdicción. Ello, ante el impago de la fianza impuesta por el foro juzgador o, en su defecto, la falta de consignación en la Secretaría de dicho foro del importe del precio de la deuda ascendente a $3,150.00, conforme al Artículo 631 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2832.

En cumplimiento con lo ordenado, el 18 de septiembre de 2025, la parte apelante compareció ante este Foro mediante una *Moción en Cumplimiento de Orden.* En síntesis, informó haber consignado $2,650.00, adicionales a los $500.00 consignados con anterioridad, para un total de $3,150.00 por concepto de la fianza en apelación autorizada por este Foro.

Así las cosas, el 19 de septiembre de 2025, emitimos y notificamos una *Resolución.* En virtud de esta, declaramos No Ha

Lugar la *Moción Urgente en Auxilio de Jurisdicci[ó]n* instada por la parte apelante y declaramos Ha Lugar la *Moción en Cumplimiento de Orden* que instó con posterioridad, para informar que había consignado la fianza. Asimismo, le concedimos hasta el 23 de septiembre de 2025 para notificar si presentaría una transcripción o exposición narrativa de la prueba.

En cumplimiento con nuestra orden, el 23 de septiembre de 2025, The Ocean presentó una *Moción en Cumplimiento de Orden,* en la que informó que reproduciría la prueba oral de la vista en una transcripción y solicitó treinta (30) días para presentarla. De este modo, mediante una *Resolución* emitida el 24 de septiembre de 2025 y notificada al día siguiente, le concedimos a la parte apelante el término solicitado.

Así las cosas, el 21 de octubre de 2025, las partes comparecieron de modo conjunto mediante una *Moción en Cumplimiento de Orden,* a la cual adjuntaron la transcripción de la prueba oral (TPO). Finalmente, el 20 de noviembre de 2025, The Ocean presentó su alegato, mientras que, el 15 de diciembre de 2025 el Municipio presentó dos escritos; a saber, una *Solicitud de desestimación al amparo de la Regla 83 del Reglamento del Tribunal de Apelaciones* y una *Solicitud de desestimación y alegato de la parte apelada.*

En cuanto al planteamiento jurisdiccional esbozado, el Municipio planteó que The Ocean incumplió con el término jurisdiccional de cinco (5) días dispuesto en el Artículo 629 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2831. Ello, debido a que la parte apelante prestó la fianza en apelación, dispuesta en los Artículos 630 y 631, 32 LPRA sec. 2832; 2835, luego de transcurrido el referido término. Como fundamento, The Ocean adujo que, de conformidad con lo resuelto por el Tribunal Supremo en *ATPR v. SLG Volmar-Mathieu,* 196 DPR 5 (2016), el término para prestar la fianza

es de carácter jurisdiccional, por lo que no puede ser subsanado con un pago posterior fuera de los cinco (5) días dispuestos para la presentación del recurso de apelación.

Con el beneficio de haber examinado el recurso de epígrafe, así como la TPO presentada por las partes de manera conjunta y sus respectivos alegatos, disponemos de los asuntos ante nuestra consideración.

**II**

**A**

Sabido es que este Tribunal de Apelaciones actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Por tanto, nuestra encomienda principal es examinar cómo los tribunales de menor jerarquía aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.*

Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro primario. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función del Tribunal de Primera Instancia. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el Tribunal de Primera Instancia. *Ortiz et al. v. S.L.G. Meaux,* 156 DPR 488, 495 (2002). Así, el Tribunal Supremo considera que este foro apelativo intermedio "tendrá la facultad para adoptar su propio

criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011).

Asimismo, es norma básica que estamos en posición de revisar en su totalidad las conclusiones de derecho. *Dávila Nieves v. Meléndez Marín*, supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los tribunales de menor jerarquía, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.*, pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros revisores para pasar juicio sobre la apreciación de la prueba por parte del foro primario, así como su adjudicación de credibilidad o las determinaciones de hechos que haya formulado, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758, 774 (2023); *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022); *Santiago Ortiz v. Real Legacy et al.*, supra. Ello, debido a que el foro adjudicador está en mejor posición que un foro revisor para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

De este modo, en consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Ello se logra utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada

o (3) exposición narrativa. *Pueblo v. Pérez Delgado*, 211 DPR 654, 671 (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. *Íd.*

**B**

El desahucio es un procedimiento especial de naturaleza sumaria cuyo objetivo principal es recuperar la posesión material de una propiedad inmueble mediante el lanzamiento o expulsión del arrendatario o precarista que la detente sin pagar canon o merced alguna. Artículo 621 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2822. Véase, además, *SLG Ortiz-Mateo v. ELA*, 211 DPR 772, 799 (2023); *Cooperativa v. Colón Lebrón*, 203 DPR 812, 820 (2020); *Mora Dev. Corp. v. Sandín*, 118 DPR 733, 749-750 (1987). La acción de desahucio se encuentra codificada, tanto en el Artículo 725 del Código Civil de 2020, 31 LPRA sec. 7863, como en los Artículos 620 a 634 del Código de Enjuiciamiento Civil, 32 LPRA secs. 2821-2838.

El mencionado procedimiento de carácter sumario permite limitar y acortar ciertos términos, así como prescindir de trámites comunes al proceso ordinario, sin que ello conlleve suprimir o menoscabar la oportunidad del arrendatario de ejercer con efectividad sus defensas durante el litigio. *Turabo Ltd. Partnership v. Velardo Ortiz*, 130 DPR 226, 241-245 (1992); *Mora Dev. Corp. v. Sandín*, supra. El desahucio no es una de las formas de terminar el arrendamiento. Es, más bien, un medio de recobrar judicialmente la cosa inmueble arrendada, cuando el arrendamiento culmina, por la concurrencia de ciertas causas extintivas. Esta acción tiene un carácter resolutorio del contrato. *Mora Dev. Corp. v. Sandín*, supra.

En cuanto al proceso de revisión de una determinación final emitida en este tipo de procedimiento, el Artículo 629 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2831, establece que la parte

perjudicada podrá apelar el dictamen dentro del término jurisdiccional de cinco (5) días, contados desde la fecha de archivo en autos de la notificación de la sentencia. *ATPR v. SLG Volmar-Mathieu*, 196 DPR 5, 15 (2016). Sobre ese particular, el Tribunal Supremo ha sido enfático en que el término establecido por el citado artículo es de naturaleza jurisdiccional. *Íd.* Asimismo, nuestro más Alto Foro judicial ha expresado que la apelación quedará perfeccionada, solo si, dentro del referido término, se presta una fianza equivalente al monto que fije el tribunal. *Íd.*, pág. 10.

Sobre ese particular, el Artículo 630 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2832, establece que no se admitirá a la parte demandada el recurso de apelación si esta no otorga una fianza, por el monto que sea fijado por el Tribunal de Primera Instancia. Esta fianza constituye una garantía que respondería por los daños y perjuicios que pueda ocasionar a la parte demandante, así como por las costas de apelación. Así, cuando el desahucio se base en falta de pago de las cantidades convenidas, a su elección, la parte demandada otorgará dicha fianza o consignará el importe del precio de la deuda en la Secretaría del foro de origen, hasta la fecha de la sentencia.

Cónsono con lo anterior, el Artículo 631 del precitado estatuto, 32 LPRA sec. 2835, dispone lo siguiente:

> En las apelaciones interpuestas en juicios establecidos por falta del pago del canon estipulado, será deber del demandado consignar en la Secretaría del Tribunal de Primera Instancia el importe de todos y cada uno de los cánones de arrendamiento que vayan venciendo u otorgar fianza, a satisfacción del tribunal, para responder del importe de todos y cada uno de dichos arrendamientos.

A la luz de la normativa antes expuesta, procedemos a disponer del caso ante nuestra consideración.

**III**

Sabido es que los tribunales deben ser celosos guardianes de su jurisdicción y que no poseen discreción para asumirla si no la tienen. *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 386 (2020). Por consiguiente, los asuntos relacionados a la jurisdicción de un tribunal son privilegiados y deben atenderse con primicia. Cónsono con lo anterior, por tratarse de un asunto de índole jurisdiccional, procedemos a evaluar si la parte apelante cumplió con la presentación oportuna del recurso, conforme exige nuestro ordenamiento jurídico en casos sobre desahucio sumario.

Como indicáramos, el Municipio argumenta que carecemos de jurisdicción para atender el caso de epígrafe en los méritos, debido a que The Ocean incumplió con el término jurisdiccional de cinco (5) días dispuesto en el Artículo 629 del Código de Enjuiciamiento Civil, *supra*. Ello, debido a que prestó la fianza en apelación, que es indispensable para el perfeccionamiento adecuado del recurso, luego de transcurrido el referido término. No tiene razón.

La *Sentencia* apelada fue notificada por la Secretaría del foro primario el 11 de septiembre de 2025. Por tanto, el término jurisdiccional de cinco (5) días vencía el 18 de septiembre de 2025.[8] Así las cosas, The Ocean presentó el recurso de epígrafe el 16 de septiembre de 2025, mientras que prestó la fianza en apelación el día 18 del mismo mes y año. Así, debido a que la parte apelante presentó el recurso y prestó la fianza dentro del término jurisdiccional de cinco (5) días, es forzoso concluir que este Foro

---

[8] Nótese que, en lo pertinente, la Regla 68.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 68.1, dispone lo siguiente: "En el cómputo de cualquier término concedido por estas reglas, o por orden del tribunal o por cualquier estatuto aplicable, no se contará el día en que se realice el acto, evento o incumplimiento después del cual el término fijado empieza a transcurrir. [...] **Cuando el plazo concedido sea menor de siete (7) días, los sábados, domingos o días de fiesta legal intermedios se excluirán del cómputo.** Medio día feriado se considerará como feriado en su totalidad". (Negrillas suplidas).

posee jurisdicción para atenderlo en los méritos. En consecuencia, procedemos a la discusión de los señalamientos de error.

A continuación, procedemos a la discusión conjunta de los señalamientos de error primero y segundo, debido a que se encuentran estrechamente relacionados. Mediante estos, la parte apelante adujo que el foro primario incidió al excluir -*motu proprio* y sin fundamento legal alguno- los recibos de pago que evidenciaban que, al 5 de mayo de 2025, los cánones de arrendamiento estaban al día. Asimismo, planteó que los referidos recibos de pago demostraban que no existía deuda alguna, al momento en que el Municipio instó la demanda de epígrafe; es decir, al 28 de marzo de 2025. En consecuencia, la parte apelante considera que el foro *a quo* erró al determinar que el Municipio tenía una causa de acción en su contra, al momento de incoar la demanda. No tiene razón.

En lo pertinente, luego de evaluar la prueba presentada durante el juicio, el foro primario determinó los hechos probados siguientes:

3. Mediante el acuerdo el Municipio dio en arrendamiento el local #3 de Bahía Viva del frente marítimo de Cataño por un canon de arrendamiento de cuatrocientos cincuenta dólares ($450.00).

4. El contrato establecía, entre otras cosas, que la demandada se comprometía a mantener al día el pago correspondiente a la renta del local y que dicha renta sería pagadera dentro de los primeros cinco (5) días naturales de cada mes.

[…]

7. Por otra parte, los términos del contrato establecían que el Municipio podría resolver el mismo sin previa notificación dentro de ciertas circunstancias. Entre esas circunstancias se encontraban la existencia de una deuda por falta de pagos de dos (2) o más cánones de arrendamiento y la falta de póliza de responsabilidad pública con endoso al Municipio.

8. Desde el mes de noviembre de 2023 la demandada dejó de efectuar pagos de conformidad con los parámetros del contrato, lo que produjo la acumulación de deuda de varios meses por la falta de pago de renta.

Sin embargo, éste continuó efectuaba abonos a las deudas acumuladas.[9]

Así las cosas, basado en los hechos que determinó probados, el foro *a quo* concluyó que procede la acción de desahucio incoada por el Municipio en contra de The Ocean. Ello, debido a que consideró probado que, a partir de noviembre de 2023, The Ocean violentó el contrato al dejar de efectuar los pagos de conformidad con sus disposiciones, lo cual provocó la acumulación de deuda.

De este modo, a pesar de que la parte apelante -tal y como alega- efectuó abonos a la deuda acumulada, el Municipio también probó que The Ocean omitió honrar la continuidad en los pagos pactada en el contrato, lo cual le facultó para darlo por terminado válidamente en marzo de 2025. En consecuencia, y toda vez que la terminación del contrato despojó a la parte apelante de cualquier derecho a retener la posesión del local arrendado, el foro primario concluyó correctamente que la causa de acción por desahucio a favor de la parte apelada procede en derecho.

Sobre los recibos a los que la parte apelante aludió en el primer señalamiento de error, el Municipio señala correctamente en su alegato en oposición, que The Ocean reclama la alegada exclusión errónea de prueba, sin antes haber realizado una oferta de prueba oportuna. De forma cónsona, la parte apelada también señala -de modo acertado- que surge de la TPO que The Ocean no planteó la pertinencia de los recibos en cuestión, hasta finales de su recontrainterrogatorio al testigo Juan C. Rivera Ocasio, Auxiliar de Contabilidad del Municipio, y que aludió a estos en calidad de escrito para refrescar memoria.[10] De este modo, la TPO refleja que The Ocean culminó su turno de preguntas sin solicitar la admisión de los referidos recibos como evidencia.[11]

---

[9] *Sentencia* apelada, págs. 4-5. Entrada núm. 25 del caso núm. BY2025CV01574 del SUMAC.
[10] Véase, Transcripción de la Prueba Oral, págs. 1-20.
[11] Véase, Transcripción de la Prueba Oral, pág. 38.

Así las cosas, recalcamos que el estándar de Derecho aplicable a la revisión de las determinaciones de hechos que emite el foro sentenciador nos llama a dar deferencia al criterio del foro primario. Ello, en ausencia de pasión, prejuicio, parcialidad o error manifiesto.[12] De este modo, subrayamos que la parte apelante no nos colocó en posición de concluir que concurren estos supuestos en el caso de epígrafe, por lo que otorgamos deferencia a las determinaciones de hechos consignadas por el foro *a quo* dictamen apelado.

Finalmente, en virtud del tercer señalamiento de error esbozado, The Ocean planteó que el foro primario incidió al inferir que no existía una póliza de seguro a favor del Municipio, así como al no mencionar que se presentó prueba testifical sobre la existencia de una póliza que vencía en julio de 2025. Este error tampoco se cometió.

Por su pertinencia a la discusión del tercer señalamiento de error, destacamos lo expresado por el foro primario en la nota al calce número 2 de la *Sentencia* apelada:

> Existía un planteamiento adicional del Municipio en cuanto a que la demandada no había cumplido con su obligación de obtener una póliza de responsabilidad pública endosada a su favor. **Durante la vista fue admitida la copia de una póliza de responsabilidad pública que adquirió la demandada con [vigencia] de 23 de abril de 2025 hasta el 23 de abril de 2026. Ciertamente, dicha póliza fue adquirida luego de incoada la demanda y no cubría el tiempo anterior a la acción.** Sin embargo, la demandada arguyó que para el término de reclamación tenía una póliza vigente y que el efecto era que una vez obtenida la póliza el 23 de abril de 2025, tenía una doble póliza. **Es preciso indicar que a pesar de dicha alegación la demandada nunca proveyó evidencia de la alegada póliza vigente antes del mes de abril. Empero el Municipio tampoco presentó prueba que demostrara lo contrario o que tendiera a indicar la inexistencia de una póliza antes del mes de abril de 2025.**[13] (Negrillas suplidas).

---

[12] *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758, 774 (2023); *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022).

[13] *Sentencia* apelada, nota al calce núm. 2, pág. 9. Entrada núm. 25 del caso núm. BY2025CV01574 del SUMAC.

En fin, a la luz de lo expresado por el foro *a quo* en la nota al calce número 2 de la *Sentencia* apelada, y en consideración a que The Ocean no presentó evidencia de la existencia de una póliza que estuviese vigente antes de abril de 2025, somos del criterio que este señalamiento de error no amerita discusión ulterior. Consecuentemente, debido a que no se cometieron los errores señalados, procede confirmar el dictamen apelado.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada. En cuanto a la *Solicitud de desestimación al amparo de la Regla 83 del Reglamento del Tribunal de Apelaciones* instada por la parte apelada, Municipio Autónomo de Cataño, se declara No Ha Lugar.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones